NOT FOR PUBLICATION                                         CLOSED

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

———————————————————————  :
                                                :
STACEY PARSON,                                  :    Civil Case No. 13-4817
                                                :     (FSH) (JBC)
                         Plaintiff,             :
                                                :    OPINION & ORDER
            v.                                  :
                                                :    March 3, 2014
HOME DEPOT USA, INC.,                           :
                                                :
                         Defendant.             :
———————————————————————  :

**HOCHBERG, District Judge:**

   This matter comes before the Court upon a motion to dismiss under Fed. R. Civ. P. 12(b)(6)

by Defendant Home Depot USA, Inc. [Docket No. 6]. The Court has decided the motion based

upon the submissions of the parties, without oral argument, pursuant to Fed. R. Civ. P. 78.

### I.  BACKGROUND

   Plaintiff Stacey Parson worked as a Sales Associate at Defendant Home Depot's Hackensack

store for around thirteen years until January 19, 2013, when his employment was terminated.

(Compl. ¶ 1). Before his termination, Plaintiff claims that his co-worker, Dawn Wetterhahn, told

him about a dispute she had with an Assistant Store Manager, Chris Grasso.  Later that day,

another unidentified employee informed Plaintiff that Grasso had purportedly told several Home

Depot employees that Wetterhahn was about to be fired.  (Compl. ¶ 5).  Plaintiff complained to a

Human Resources Manager that Grasso had allegedly violated the Home Depot Business Code

of Conduct by breaching confidentiality regarding personnel matters and telling other employees that Wetterhahn was about to be fired.  (Compl. ¶¶ 6-7).

About one week later, Plaintiff was terminated due to lateness.  Plaintiff asserts that previous lateness had never before resulted in disciplinary action. (Compl. ¶ 8).  After he was terminated, Plaintiff brought a one-count Complaint in New Jersey Superior Court, Bergen County, on July 1, 2013, alleging that his termination constituted retaliation under the Conscientious Employee Protection Act, N.J.S.A. 34:19-1, et seq.  Defendant removed the action to this Court on August 12, 2013, and moved to dismiss, [Docket No. 6], for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted).

When considering a motion to dismiss under *Iqbal*, the Court must conduct a two-part analysis. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the

complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Fowler v.*

*UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotation marks

omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements

of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions

devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal quotations and

alterations omitted).

## III. DISCUSSION

Plaintiff alleges a violation of The New Jersey Conscientious Employee Protection Act

(CEPA), the New Jersey statute enacted to "protect employees who report illegal or unethical

work-place activities" from retaliation by their employers. *Higgins v. Pascack Valley Hosp.*, 158

N.J. 404, 417 (1999) (quoting *Barratt v. Cushman & Wakefield*, 144 N.J. 120, 127 (1996)).

### a. CEPA Claim

The Act, N.J.S.A. 34:19-3, provides, in relevant part, that:

> An employer shall not take any retaliatory action against an employee because the employee does any of the following:
>
> a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes . . . is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ;
>
> b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer . . . ; or
>
> c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:
> (1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ;

3

> (2) is fraudulent or criminal . . . ; or
>
> (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

The Complaint does not specify the CEPA subsection under which Plaintiff challenges Defendant's conduct.  However, in opposition to the motion to dismiss, Plaintiff argues that N.J.S.A. 34:19-3c applies here.  (Pl.'s Br. in Opp'n to Mot. to Dismiss 6, Docket No. 9).  A plaintiff asserting a CEPA claim "pursuant to N.J.S.A. 34:19-3c must demonstrate that: (1) he or she reasonably believed that his or her employer's conduct was violating either a law, rule, or regulation promulgated pursuant to law, or a clear mandate of public policy; (2) he or she performed a 'whistle-blowing' activity described in N.J.S.A. 34:19-3c; (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action."  *Dzwonar v. McDevitt*, 177 N.J. 451, 462 (2003).  In establishing the first element, subsection 3c contains three types of actionable conduct that an employee may report without fear of being terminated, including that which:

> 3c(1) is in violation of a law, or a rule or regulation promulgated pursuant to law . . . ;
>
> 3c(2) is fraudulent or criminal . . . ; or
>
> 3c(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

As a threshold matter, "when a plaintiff brings an action pursuant to N.J.S.A. 34:19-3c, the trial court must identify a statute, regulation, rule, or public policy that closely relates to the complained-of conduct."  *Dzwonar*, 177 N.J. at 463.  Plaintiff does not assert a violation of law or regulation under subsection 3c(1), nor fraudulent or criminal conduct under 3c(2), but instead claims "ethical misconduct resulting in retaliation."  (Pl.'s Br. 10).  Plaintiff correctly notes that "cases have impliedly or explicitly recognized conduct which involved allegations of ethical

misconduct which have qualified under CEPA or Pierce,[1] even in the absence of evidence of a

clear statutory or regulatory violation as the basis for the employee's conduct, where there was

also evidence of ethical violations." (Pl.'s Br. 8).  But a plaintiff cannot survive a motion to

dismiss by merely asserting that some conduct is unethical; rather he must establish a

"substantial nexus" between the complained-of conduct and a "clear mandate of public policy"

under 3c(3).  *Dzwonar*, 177 N.J. at 463; *see Hitesman v. Bridgeway Inc.*, 430 N.J. Super. 198,

215 (App. Div. 2013) ("No cognizable violation can occur if the authority relied upon is not one

specified in the statute.").[2]  Consequently, Plaintiff's claim that an employer engaged in

unethical conduct which is neither asserted to be illegal nor fraudulent shall be analyzed under

subsection 3c(3) to determine whether there is a nexus to a "clear mandate of public policy." *See*

*Estate of Roach v. TRW, Inc.*, 164 N.J. 598, 610-11 (2000).

---

[1] CEPA is the partial codification of the New Jersey Supreme Court's decision in *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 72 (1980). *See D'Annunzio v. Prudential Ins. Co. of Am.*, 192 N.J. 110, 119 (2007). Under either CEPA subsection 3c(3) or the common law cause of action, a plaintiff must show a violation of "a clear mandate of public policy." *Id.*  "[T]he caselaw determining the sources and characteristics of clear mandates of public policy for the purpose of applying the *Pierce* doctrine is also useful in defining the parameters of a CEPA claim." *Mehlman v. Mobil Oil Corp.*, 153 N.J. 163, 180 (1998).

[2] The cases that Plaintiff cites, (Pl.'s Br. 9-10), do not suggest that any conduct the particular employee deems unethical is actionable, rather these cases are consistent with the proposition that Plaintiff must reasonably believe the challenged conduct is either illegal or fraudulent under 3c(1-2), *see Barratt v. Cushman & Wakefield of New Jersey, Inc.*, 144 N.J. 120 (1996) (reporting real-estate broker's illegal activity), or alternatively, against a clear mandate of "public health, safety or welfare," *see Hernandez v. Montville Twp. Bd. of Educ.*, 354 N.J. Super. 467 (App. Div. 2002) (reporting unsafe school conditions), *Turner v. Associated Humane Soc'y, Inc.*, 396 N.J. Super. 582 (App Div. 2007) (reporting the adoption of an animal with previous violent incidents).

5

**b. Clear Mandate of Public Policy**

To establish a prima facie case, the plaintiff must point to a specific public policy which he

reasonably believes the employer violated. *Hitesman*, 430 N.J. Super. at 213 ("plaintiff was

required to identify 'a clear mandate of public policy concerning the public health, safety or

welfare' with which he reasonably believed [Defendant's] conduct was incompatible."). For

"purposes of . . . CEPA claims, the determination whether the plaintiff adequately has

established the existence of a clear mandate of public policy is an issue of law." *Mehlman v.*

*Mobil Oil Corp.*, 153 N.J. 163, 187 (1998).  A clear mandate of public policy "is one that

concerns the public, health, safety or welfare or protection of the environment." *Maimone v. Atl.*

*City*, 188 N.J. 221, 231 (2006) (internal quotation marks omitted). "The sources of public policy

include legislation; administrative rules, regulations or decisions; and judicial decisions. In

certain instances, a professional code of ethics may contain an expression of public policy."

*Mehlman,* 153 N.J. at 181. To assert a clear mandate of public policy "under Section 3c(3), there

should be a high degree of public certitude in respect of acceptable versus unacceptable

conduct." *Maw v. Advanced Clinical Commc'ns, Inc.,* 179 N.J. 439, 444 (2004).  "[T]he mandate

of public policy must be clearly identified and firmly grounded and must not be vague,

controversial, unsettled, or otherwise problematic." *Hitesman*, 430 N.J. Super. at 217 (quoting

*Mehlman*, 153 N.J. at 181) (internal quotation marks omitted).  Instead, the identified policy

"must have public ramifications, . . .  the dispute between employer and employee must be more

than a private disagreement." *Maw*, 179 N.J. at 445.  CEPA "is not intended to spawn litigation

concerning the most trivial or benign employee complaints." *Estate of Roach*, 164 N.J. at 613-

14.

Here, the Court "must make a threshold determination that there is a substantial nexus

between the complained-of conduct" and an identified public policy. *Dzwonar v. McDevitt*, 177

N.J. 451, 464 (2003).  Plaintiff asserts that he objected to unethical conduct by his manager,

Grasso, who purportedly breached confidentiality as to personnel issues.  As sources of public

policy, Plaintiff appears to identify: (1) the Home Depot Business Code of Conduct and Ethics,

(Compl. ¶ 3); and (2) an implied covenant of good faith, (Pl.'s Br. 18).


(1)  Employee Manual

Plaintiff argues that "violations of ethical codes of conduct utilized by an employer where

retaliation occurs in response to a reporting of any such violations" are actionable under CEPA.

(Pl.'s Br. 18). But Plaintiff's Complaint does not identify any specific mandate of public policy;

it merely states that "during the course of his employment the plaintiff became aware of the

ethical values of the company as stressed by the company in various forms, including an

Employee Manual." (Compl. ¶ 3).  And in his opposition brief, rather than setting forth a public

policy, Plaintiff cites a general policy of "commitment to ethics and integrity" and identifies

subheadings of the employee manual, including: "Zero Tolerance for Retaliation, Open Door

Policy, Confidentiality, Privacy and Information Protection, Respect for All People, Getting

Answers to Your Questions or Reporting a Concern, all of which are described as Business Code

of Conduct and Ethics, accompanied by a document entitled Doing the Right Thing." (Pl.'s Br.

3).

An employee's objection to conduct based on an employee manual's "commitment to ethics"

is not a public policy that is "clearly identified and firmly grounded." *Hitesman*, 430 N.J. Super.

at 217; *see MacDougall v. Weichert*, 144 N.J. 380, 391 (1996) ("employees can bring wrongful

discharge claims only if they can identify an expression that equates with a clear mandate of

public policy"). Consequently, Plaintiff has failed to identify "recognized sources of public

policy within the intent of c(3) [such as] state laws, rules and regulations." *Maimone v. City of

Atl. City*, 188 N.J. 221, 231 (2006); *see, also, Klein v. Univ. of Med. and Dentistry of N.J.*, 377

N.J. Super 28 (App. Div. 2005) ("merely couching complaints in terms of a broad-brush

allegation of a threat to patient's safety is insufficient to establish the first prong of a CEPA

claim."); *Eddy v. State*, A-3129-07T1, 2008 WL 5118401, at *6 (App. Div. Dec. 8, 2008)

(affirming dismissal because the plaintiff's "complaints are not supported by the litany of broad

and generalized legislative, rule and procedural statements.").


(2) Implied Covenant of Good Faith

Assuming for the purposes of a motion to dismiss that there was an implied covenant of good

faith between Defendant and its employee, private contracts are not valid sources of public

policy under CEPA. *See Maw v. Advanced Clinical Commc'ns, Inc*., 179 N.J. 439, 448 (2004)

("We conclude that plaintiff's private dispute over the terms of the do-not-compete provision in

her employment agreement does not implicate violation of a clear mandate of public policy as

contemplated by Section 3c(3) of CEPA."); *Dzwonar*, 177 N.J. at 469 ("Because [Union] bylaws

are not a law, rule or regulation pursuant to CEPA, but rather a contract between the union and

its members, the trial court should have precluded that claim.") (internal quotation marks and

citations omitted); *Bryant v. Liberty Health Care Sys., Inc*., A-3659-09T3, 2011 WL 6341087, at

*5 (App. Div. Dec. 20, 2011) (affirming dismissal of CEPA and Pierce[3] claims because,

"implied through terms in an employee handbook or otherwise, Guzman's employment was

---

[3] See note 1, *supra*.

8

terminable at will, so long as the employer did not violate any laws or clear mandates of public policy.").

Plaintiff has not pointed to any articulable clear mandate of public policy concerning the "public health, safety or welfare or protection of the environment" applicable to this employment dispute.  Therefore, the Complaint does not state a plausible claim for relief under the enumerated statutory section of New Jersey law. *Maw*, 179 N.J. at 448 (reversing appellate division and reinstating trial court's dismissal because plaintiff did not identify a legitimate mandate of public policy by referencing a private contract);  *Russelman v. ExxonMobil Corp.*, Civ. No. 12-752, 2012 WL 3038589, at *4 (D.N.J. July 25, 2012) ("Plaintiff's Amended Complaint fails to identify a specific expression of public policy, and, as discussed in Pierce, failure to do so empowers the court to grant a motion to dismiss."); *Brangan v. Ball Plastic Container Corp.*, Civ. No. 11-5470, 2012 WL 1332663, at *4 (D.N.J. Apr. 17, 2012) (dismissing complaint because "Plaintiff has not identified the clear mandate of public policy, and thus failed to establish the first element of the prima facie case.").

## IV. CONCLUSION & ORDER

Because Plaintiff's Complaint does not identify any expression of public policy, the

Complaint is dismissed.

**ACCORDINGLY**, it is, this 3rd day of March, 2014, hereby

**ORDERED** that Defendant's Motion to Dismiss is **GRANTED**; and it is further

**ORDERED** that Plaintiff's Complaint is **DISMISSED** without prejudice, and it is further

**ORDERED** that this case shall be marked as **CLOSED**.


                **SO ORDERED**


                **/s/ Faith S. Hochberg**
                **Hon. Faith S. Hochberg, U.S.D.J.**